

U.S. Department of Justice

United States Attorney
Eastern District of New York

KTF:BW/DIB
F. #2024R00288

271 Cadman Plaza East
Brooklyn, New York 11201

January 13, 2025

Robert Knief
Assistant United States Attorney
United States Attorney's Office
District of Nevada

   Re: United States v. Shane Hennen
     <u>Docket No. 25-MJ-06</u>

Dear Assistant United States Attorney Knief:

   The undersigned respectfully requests that your Office file this letter in connection with the above-captioned matter in support of the government's application for a detention hearing, pursuant to 18 U.S.C. § 3142(f)(2), and the detention of the defendant Shane Hennen, who will be presented on a complaint (the "Complaint") charging him with wire fraud conspiracy and money laundering, in violation of Title 18, United States Code, Sections 1349 and 1956. As described below, in the Complaint, the defendant is alleged to have helped orchestrate a fraudulent sports wagering scheme relating to a former National Basketball Association ("NBA") player identified in the Complaint as NBA Player 1. Given (1) the defendant's means and motive to evade detection by the government, creating a serious risk of flight, evidenced by the defendant's attempted flight after being alerted of the government's investigation, and (2) the strength and nature of the government's case, detention pending trial is the only means to secure his appearance in court.

  I. <u>Factual Background</u>

   As described in detail in the Complaint, in January and March 2024, the defendant is alleged to have been a co-conspirator of a fraudulent wager scheme involving NBA Player 1. As alleged in the Complaint, in sum and substance, NBA Player 1 agreed to withdraw from NBA games early enabling co-conspirators, including an individual identified as Co-Conspirator 1 and the defendant Shane Hennen, to place fraudulent wagers on NBA Player 1 netting them potentially millions of dollars in profits. As alleged in the Complaint, the defendant used a network of proxies and straw bettors to place fraudulent bets on NBA Player 1 and launder the illicit proceeds.



On January 8, 2025, the defendant purchased a one-way ticket to Colombia, connecting through Panama, which was scheduled to depart from Harry Reid International Airport in Las Vegas, Nevada ("HRI") on January 12, 2025—just days before the January 15 Deadline. The defendant was arrested in connection with the Complaint at HRI as he attempted to board the above-referenced flight to Panama. During a search incident to the defendant's arrest, law enforcement agents found on the defendant multiple cell phones and just under $10,000 in cash. Upon arrest, the defendant also stated to law enforcement agents, unprompted, that he was traveling to Colombia to purportedly seek dental treatment.

II.   The Defendant's Criminal History

The defendant has a significant criminal history dating back years. In May 2006, the defendant was charged with possession of a firearm without a license, disorderly conduct, engaging in illegal conduct relating to gambling devices, engaging in illegal conduct relating to facsimile (i.e., replica or toy) bombs and possession of an instrument of crime, all Pennsylvania state misdemeanors. In 2007, he pleaded guilty to various of these crimes and was sentenced to six months' probation.

In 2009, the defendant was charged with aggravated assault, a felony, and reckless endangerment, a misdemeanor. In 2011, the defendant pleaded guilty to aggravated assault and was sentenced to 18 months' imprisonment and four years' probation.

---

[1]   The government respectfully requests that this letter be filed under seal given that it describes ███████████████████████████████████████████████

In 2011, the defendant pleaded guilty to: (i) possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and (ii) conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846.  See Judgment, United States v. Hennen, et al., 09-CR-348 (W.D. Pa. 2009).  He was sentenced to two concurrent terms of 30 months' imprisonment and two concurrent terms of supervised release of three and four years.  See id.  Based upon records provided to the government from law enforcement, the government understands that after the defendant's release from prison, the court revoked the defendant's supervised release due to non-compliance, and resentenced him to 30 days' imprisonment.

III.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

A finding of risk of flight need only be based on a preponderance of the evidence. See United States v. Keeton, No. 20-10162, 2020 WL 4805479, at *1 (9th Cir. June 17, 2020); United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019); United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985) ("In the trial court and in this court, the Government must establish risk of flight by a clear preponderance of the evidence, not by the higher standard of clear and convincing evidence.").  In meeting its burden, the government is "not…bound by the rules of evidence … and may proceed by proffer."  See United States v. Williams, 654 Fed. Appx. 3, 3 (2d Cir. 2016) (citing Ferranti, 66 F.3d at 542); see also United States v. Young, No. 01-CR-4011, 2014 WL 6601939, at *2 (N.D. Cal. Nov. 18, 2014) (ordering the defendant detained after "having considered the proffers by the parties and the probation officer, and the arguments of counsel"); United States v. Hardeman, No. 3-08-70765, 2008 WL 4891048, at *1 (N.D. Cal. Nov. 12, 2008) ("Having considered the parties' proffers, and the pretrial services report, I find that the government has met its burden of showing by a preponderance of the evidence that the defendant presents a risk of flight.").

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant, including whether the defendant is currently on probation, parole, or other release; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).  Where the evidence of guilt is strong, it provides "a considerable incentive to flee."  Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"); United States v. Super, No. 23-CR-05233, 2023 WL 5952715, at *3 (W.D. Wash. Sept. 13, 2023) (in context of pre-trial detention The evidence here is both relevant and necessary to assess what risk he poses to the community and the risk of flight.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

IV.   The Defendant Should Be Detained Pending Trial

As described below, the government has met its burden of establishing the defendant's risk of flight sufficient to require his detention pending trial. In particular, courts consistently hold that where, like here, a defendant has the means and motive to disappear and escape answering for his crimes, detention pending trial is warranted. See, e.g., United States v. Williams, 654 F. App'x 3, 4 (2d Cir. 2016) (affirming order of detention based on defendant's ability "to evade oversight and detection from government agents").

First, that the defendant, in fact, attempted to flee the country just days before the January 15 Deadline demonstrates that there is a serious and substantial risk that the defendant will not return to court. See, e.g., United States v. Muhtorov, 702 F. App'x 694, 696 (10th Cir. 2017) (pretrial detention was appropriate where the defendant was "arrested at the . . . airport en route to Istanbul, Turkey. He had purchased a one-way ticket"); United States v. Molina, No. 11-CR-528, 2012 WL 3564013, at *2 (S.D.N.Y. Aug. 16, 2012) (defendant was detained pending trial where, among other things, he was found in possession of multiple cell phones and a large sum of cash).

Second, the defendant's motive to flee is obvious—the proof of his guilt is overwhelming, and, particularly given his substantial criminal history, he may ultimately face up to two decades in prison upon conviction. Among other evidence, witnesses, phone records, financial records and betting records confirm that the defendant orchestrated and participated in numerous fraudulent wager schemes, which, among other things, resulted in potentially millions of dollars' worth of illicit profits and money laundering transactions. As a result of this evidence of the defendant's guilt, the defendant has considerable incentive to flee—counseling strongly against his release under any conditions. See Millan, 4 F.3d at 1046; Palmer-Contreras, 835 F.2d at 18; Super, 2023 WL 5952715, at *3.

Third, the defendant's extraordinary financial resources and access to a network of co-conspirators across the country continue to provide him with a means to flee and to do so undetected, independently warranting detention. See, e.g., United States v. Maxwell, 510 F. Supp. 3d 165, 174 (S.D.N.Y. 2020) (detention was appropriate where "the Defendant's extraordinary financial resources ,. . . continue to provide her the means to flee the country and to do so undetected"); United States v. Hoover, No. CR-14-554, 2014 WL 2094201, at *5 (D. Ariz. May 20, 2014) (detention was appropriate where the defendant had the "financial means and travel expertise to effectuate a 'strong incentive to flee'"). The government has developed substantial evidence that the defendant has conducted or caused to be conducted illicit financial transactions and fraudulent sports wagers totaling millions of dollars, including through a network of proxies and straw bettors located across the country, such as his co-conspirators

4

described in the Complaint. The government has no reason doubt that the defendant will leverage these same co-conspirators to assist him with fleeing from prosecution.

Finally, the defendant's personal history illustrates that his substantial risk of flight cannot be mitigated by stringent bail requirements. His criminal history is substantial, longstanding, and varied, and demonstrates an inability to comply with the law or court rules. As just one example, a federal judge in Pennsylvania found it necessary to revoke his supervised release following a term of imprisonment for a serious drug offense.

Put simply, because there is a serious and substantial risk that the defendant will not return to court, he must be detained pending trial.

V.  Conclusion

For all the foregoing reasons, the government respectfully submits that the defendant should be detained.

Respectfully submitted,

CAROLYN POKORNY
Acting United States Attorney

By:   /s/ David I. Berman
Kaitlin T. Farrell
Benjamin Weintraub
David I. Berman
Assistant U.S. Attorney
(718) 254-6167

cc:   Clerk of Court (by Email and ECF)
Defense Counsel (by ECF)